José Nine, Petitioner and Appellant, v. Jorge A. Ortiz et al., Respondents and Appellees.

No. 9357. Argued November 3, 1947.—Decided December 22, 1947.

884

*Enrique Báez García* for appellant. *José Rafael Gelpí* for appellees.

Mr. Justice Marrero delivered the opinion of the Court.

José Nine filed in the District Court of Mayagüez, on February 9, 1945, a petition for mandamus, in which he alleged in brief that prior to July 28, 1943, the Municipality of Lajas requested authorization from the Public Service Commission to dispose of $1,000 belonging to the Waterworks Permanent Reserve Fund, for the payment of labor in connection with the following works: (a) completion of the laying of a 3-inch pipe line in Amistad Street; (b) change of pipe line in Hospital Street, from the existing 2-inch pipe line to one of 3 inches; (c) extension of the 2-inch pipe line to Frank Development along San Blas Street up to the road leading to the ward of La Haya; and (d) extension of the pipe line up to the developments along the Lajas–Boquerón Highway; that the Public Service Commission granted the authorization requested; that pursuant to the provisions of §§ 8 and 38 of the Municipal Law, the Mayor of Lajas caused a notice to be published in the newspaper "La Democracia" for the statutory period, calling for bids for the execution of the above-mentioned works, and stating that the bids would be received not later than October 20, 1943, at 2:00 p.m., in his office at the City Hall of Lajas; that when the appointed hour arrived and no bidders appeared, the proceedings were declared discontinued; that in view of this situation, the Board of Awards met and decided that the works should be executed through separate orders and by the system of administration; that orders were issued to the petitioner to furnish the labor for the works already mentioned; that before rendering the services ordered by the Mayor, the petitioner presented the four orders to be certified by the Municipal Auditor of Lajas and that said officer proceeded to approve the same and to certify the existence of funds in

the hands of the Municipal Treasurer for the payment thereof; that the petitioner then started the works ordered and during the execution thereof, on November 10, 1943, the Municipal Assembly of Lajas suspended Aurelio Ramírez Ramírez from his office and pay as Mayor and Municipal-Director of Public Works, appointing in his stead, José Miguel Toro, who held that office as Acting Mayor up to January 8, 1945; that upon the completion of the works ordered, the petitioner presented the corresponding vouchers to the Acting Mayor, who was bound to approve them as Director of Public Works; that the petitioner completed, and the municipality received, the works ordered without any protest; but that upon presenting the vouchers to the Acting Mayor he refused (a) to certify, as Director of Public Works, that the account was correct and that it had not been paid in whole or in part; or (b) to approve in his capacity as Mayor, the payment of the indebtedness, inasmuch as the aforesaid José Miguel Toro considered that, since he was the Acting Mayor, he had no power to approve that order, said approval corresponding to Mr. Ramírez Ramírez, or to himself when his status as Mayor should be finally determined at the conclusion of certain pending litigation; that the Municipal Auditor of Lajas certified the vouchers as correct and did not pay them because the signatures of the Director of Public Works and of the Mayor were lacking; and that the period from November, 1943, to January 8, 1945, elapsed without there having been any decision on the status of the Mayor of Lajas, and on the latter date the whole administration of that town was changed for the present one as a result of the 1944 election; that the petitioner again presented the vouchers to the newly elected Mayor, Jorge A. Ortiz, and that both he and the new Municipal Auditor have refused to make the payment; that there is no reason whatsoever for the rejection of the vouchers by said officers, as there are funds expressly set aside in the books of the Municipality of Lajas for the payment of said works, the cost of which amounts to $981.25; and that the

petitioner has no other remedy than the present mandamus proceeding to compel the respondents to pay the amount of his claim.

The respondents answered, admitting some of the averments of the petition, denying others, and setting up as special defenses that no legal order ever existed for the execution of the works involved in the petition; that the petitioner, under the law, was precluded from contracting with the municipality, as the Municipal Law and the Political Code prohibited it; that the petition was insufficient; that since Lajas is a third-class municipality, the Municipal Assembly, not the Board of Awards, was the body vested with legal authority to execute works of the kind mentioned in the petition by administration, without the calling of bids or proposals; that mandamus did not lie, as it did not appear from the petition that the respondent lacked any defense; that it did not appear that the alleged indebtedness had been liquidated or expressly accepted by all the parties involved in the controversy; that if the payment were made, a public offense would thereby be committed by the officers of the Municipality of Lajas and especially by the respondents; that the transactions involved in the petition were carried out between the petitioner and Aurelio Ramírez Ramírez, then Mayor of the Municipality of Lajas, seeking solely petitioner's personal profit and with the deliberate purpose of defrauding, as he actually defrauded, the Municipality of Lajas; that the petitioner was precluded by law from acting in representation or on behalf of the Mayor of Lajas and, consequently, in the name of the Municipality of Lajas, as he could not act as agent or representative of the latter in the transactions involved in this litigation; that there was a nonjoinder of parties-defendant, because the Municipal Treasurer has not been joined as a respondent and, further, because the municipality of Lajas had not been so joined, either; and that there had been laches in the institution of this proceeding.

The issue having thus been joined, the proceeding was heard by the District Court of Mayagüez on March 26 and May 16, 1945, and on June 26 following, that court rendered a decision denying the petition. The lower court in its opinion, after stating that it had found proven by a preponderance of the evidence, that the transactions referred to in the petition were carried out between José Nine and Aurelio Ramírez Ramírez, former Mayor of Lajas, with the only purpose of personally benefiting himself and with the deliberate intention to defraud, as he actually defrauded, the municipal funds of Lajas, set forth the following grounds in support of such finding:

1. That from the testimony of the petitioner it was evident that he had been present at the time the bids were to be received, but abstained from making a proposal in order to see if he could get something out of it; and therefore it could be seen that the petitioner did not go there to bid in good faith, since, although he attended the proceedings ostensibly to submit a bid, it was in line with his personal interest not to make any proposal and to be awarded the contract for executing the work by administration;

2. That from the testimony of Julio Ortiz, who at the time of the call for bids was Treasurer-School Director of Lajas, it appeared that the witness was not present at any meeting of the Board of Administration or Awards of the Municipality of Lajas held on October 20, 1943;

3. That the petitioner collected from the Municipality of Lajas, for services rendered to said municipality as agent of Mayor Ramírez during 53 days, the sum of $635, which was manifestly excessive.

4. That it was illegal and immoral for a person who held an appointment as agent of the Municipality of Lajas, whereby he collected for his services $635 in 53 days, to contract, while such an appointment was still in force, for the rendition by him of services to said municipality.

5. That it seemed suspicious that, immediately after the proceedings in connection with the call for bids had been discontinued, it should be decided to execute the works by administration and to enter into a contract therefor with Nine, who happened to be present, it being even more suspicious that on the same day an order should be issued to the petitioner for the execution of the first part of the contract, which was divided into four parts;

6. That the testimony of Julio Olán, who at that time was master builder employed by the municipality and who, notwithstanding the fact that he supervised said works, stated that he did not know where they were executed, should be regarded with suspicion;

7. That it also seemed suspicious that the petitioner, upon being cross-examined by the respondents, should state that he did not remember the kind of pipe line which he had placed in the streets of Lajas or of the pipe line which he had laid in each specific place, despite the fact he had laid such pipe line in only four places of the town; and

8. That it was likewise suspicious that, notwithstanding the large-size pipe line claimed to have been laid by the petitioner in four streets of Lajas, upon excavations being made in Amistad Street in said municipality by Juan Alameda, assistant plumber and witness for the respondents, it should turn out that no pipe line of any kind had been laid or changed in said street in recent years; and, lastly, that the petitioner had not come into court with clean hands.

At the risk of being prolix, we have stated at length the averments of the complaint, the defenses set up in the answer, and the grounds of the opinion rendered by the judge of the lower court. In so doing, we have sought to set forth in our opinion, with the utmost clearness, the grounds relied on by both parties and the reasons that the district court had for deciding the case in the manner it did. However, a careful examination which we have made of the record does not

permit us to agree with the judgment rendered, nor with the reasoning of the opinion on which said judgment is based.

The record of this case shows that after an authorization had been obtained from the Public Service Commission for the expenditure of $1,000 in the execution of certain works connected with the waterworks of the Municipality of Lajas, a notice was published in the newspaper ''La Democracia'' calling for bids on the four works mentioned therein, which would be received in the office of the Mayor; that at the time the proposals were to be received no bids were offered; that at that time the petitioner was present, and that, in view of the lack of bids, it was agreed by the Board of Awards that the works should be constructed by administration. There is not the slightest doubt about all this. Nor is there any doubt that the four works were awarded to the petitioner and constructed by him in accordance with the instructions received; that the municipality was benefited by them, and that, notwithstanding the existence of funds available for the payment thereof, such payment has not yet been effected.

 Under § 14 of Act No. 53 of April 28, 1928 (Laws of 1928, p. 334), as amended by Act No. 39 of April 20, 1936 (Laws of 1936, p. 254), Lajas is a third-class municipality. In accordance with § 28 of the first-cited Act, as amended by Act No. 98 of May 15, 1931 (Laws of 1931, p. 594), the municipalities of this class only have four administrative officers, to wit: (1) Mayor; (2) Treasurer-School Director; (3) Secretary-Auditor; (4) Health Director; and said Section further provides that ''A board of administration is hereby created in each municipality, to be composed of the respective administrative officers . . . '' Among the powers granted by this Section to said board is the power ''(a) To hold auctions and make awards.'' We have not found in the Municipal Act or in its amendments, any Section or provision which specifically creates the so-called board of awards. All the indications are that the said Board of Administration

has been indistinctly designated as such and as Board of Awards by the Legislature, in the above-mentioned Municipal Law, the latter designation being used when the Board of Administration deals with auctions.

Regarding the auction proceedings, § 38 of the Municipal Law provides that "The board of awards shall have the right to reject any or all bids, and in the latter case, the municipal assembly may announce a new sale or may dispose of the matter in the manner most advantageous to the municipality, without competition," and that "When a sale * has been announced and no bids shall have been received, the board of awards shall dispose of the matter in such manner as may be most convenient to the municipality;" . . . (Italics ours.) The first paragraph cited above is not applicable to the case at bar, since the parties herein admit that no bids were received and that, therefore, there was no need to reject any or all of them. The second paragraph copied above is the one applicable, since upon the failure to receive bids after advertising therefor, the board could dispose of the matter in the manner most convenient to the municipality. This was precisely what the Board of Awards did: Since there were no bids whatsoever, it proceeded, pursuant to a proper call made by the Mayor, to hold a special session in the assembly room of the City Hall.

■ In Exhibit V (bis) the Board of Administration, not the Board of Awards, of the Municipality of Lajas is mentioned; but since we have already stated that the Board of Administration and the Board of Awards are one and the same thing, the apparent change of name is immaterial. Said exhibit goes on to state that when the roll was called by the Secretary, the Mayor and Chairman of the Board, the Secretary, and the Municipal Treasurer answered present. As the Board of Administration in said municipality consisted of

---

* The Spanish text of the statute uses the word "subasta" the English equivalent of which is "auction".

only four members, it is indisputable that the three members present constituted a quorum.[1] The said exhibit was signed by the Secretary and by the Mayor of the municipality. The signature of the Treasurer is lacking, but we fail to see the necessity therefor.

■ Julio Ortiz, Municipal Treasurer at the time the Board of Administration met and decided to carry out the construction of the works involved in this litigation, was one of the witnesses for the respondents. He stated that at no time was he summoned for said meeting of the Board of Administration. However, his own testimony shows that he was the person who preferred charges against the Mayor of Lajas before the Municipal Assembly. Since there was documentary evidence establishing the manner in which the meeting of the Board of Administration was held and the persons who were present, it is not necessary for us to determine whether or not the testimony of Ortiz, regarding the last particular was admissible, for, in any event, the contents of the document seem to us to be more worthy of credit than the testimony of Ortiz. The presumption is "That official duty has been regularly performed" (Law of Evidence, § 102, subdivision 15), and there is nothing to convince us that that presumption has been overcome in this case.

■ Exhibit V (bis) also shows that, as there was a quorum present, the Mayor reported on the advertising for bids for the execution of the four specified works and stated that, since there were no bidders, he proposed and it was accepted, that the Board of Administration should apply the provisions of § 38 of the Municipal Law.[2] Pursuant to the proposal of the mayor and to the provisions of § 38, *supra,* the board decided that the work be done by administration.

We fail to see anything strange or illegal in the fact that, upon advertising for bids and failing to receive any proposal,

---

[1] At that time the Municipality of Lajas did not have a Health Director.

[2] The pertinent part of § 38 of the Municipal Act to which the Mayor referred and which is copied in the exhibit, has already been cited.

the Board of Administration should immediately meet and, in conformity with the above-cited Section of the Municipal Law, should decide to construct by administration the works involved in the call for bids.

Nor does it seem strange to us that a person should attend an auction as spectator or bidder; that there being no other bidders, he should refrain from submitting any proposal; and that, afterwards, upon the Board deciding to execute the works in question by administration, his services be engaged for that purpose.

■ Once the Municipal Board of Administration had decided to construct the four works by administration, it was incumbent on the Mayor, as Chairman of the Board and Director of Municipal Works,[3] to carry out the decision of the board; and since the latter had not specified the person or persons to be in charge of the execution of the works by administration, it must be presumed that the Mayor was empowered to designate said person or persons, which he did by awarding the four contracts to the petitioner.

■ The record also shows that at a time prior to the holding of the auction, Aurelio Ramírez Ramírez, as Mayor of Lajas, ordered the petitioner herein to render certain special services, for which petitioner was paid the amount mentioned in the opinion of the lower court. These services, according to Exhibits A II, A III, A IV, A V, A VI, and A VII, consisted of certain transactions carried out by the petitioner (1) in the offices of the Insular Auditor, of the Insular Treasurer, and of the engineer Rafael Pacheco Guerra; (2) in the commercial establishment of Roberto Colón Machinery Company, in the Insular Auditor's Office, and elsewhere by direction of the Mayor; (3) in the office of the Insular Auditor and in the city of Ponce; (4) in Ponce, in the completion of WPA projects in the Municipality of Lajas, and in procuring tar for the paving of the streets; and

---

[3] See the end of paragraph 8 of § 29 of the Municipal Law.

(5) in the Insular Auditor's Office, in the Treasury Department, in the firm of R. Colón, and with certain insurance companies. All these services were ordered by the Mayor in writing, and for all of them the Municipality of Lajas paid to the petitioner, they having been rendered from September 8 to October 22, 1943. We do not think that the performance of these specific and temporary services converted the petitioner into a municipal employee and hence precluded him from contracting with the municipality. See § 10 of the Municipal Law, as amended by Act No. 253 of April 1, 1946 (Laws of 1946, p. 504).[4]

The record likewise shows that, before the four works involved in this proceeding were awarded, the petitioner had sold to the Municipality of Lajas, cement, lumber, and other materials at prices which exceeded those fixed by the Office of Price Administration. The law penalizes such an action and grants remedies to the buyer; but, since those purchases were made prior to the contracts herein, it can not be now maintained that by reason of such sales at excessive prices the petitioner has been guilty of fraud in connection with the four above-mentioned contracts.

The rule that fraud is never presumed, that he who alleges it must prove its existence through incontestable facts, that it should not be considered as established by mere conclusions, conjectures, suspicions, or doubts, and that the evidence showing fraud must be so solid, clear, and convincing—is so generally accepted, that it should not be necessary to cite any decisions in support thereof. It will suffice to mention the case of *Texas Co (P. R.) Inc.* v. *Estrada,* 50 P.R.R. 709. In the case at bar the defendants charged the petitioner with fraud, but the evidence adduced is far from being the solid, clear, and convincing proof required by the adjudicated cases.

---

[4] Section 10, in its pertinent part, provides:

". . . No member of the municipal assembly, executive or administrative officer, or *employee of the municipality* shall be interested directly or indirectly in contracts entered into with the municipality," . . . (Italics ours.)

■ As to the failure to join the Municipality of Lajas and the Treasurer as parties defendant, we will say that they were not necessary parties. Ordinarily the vouchers issued by the municipality are signed only by the Mayor and the Municipal Auditor. Those included in the record as Exhibits V to VIII have already been signed by the Auditor of the Municipality of Lajas, the signature of the Mayor being the only one lacking.

■ Although mandamus is a legal remedy, some equitable principles are applicable thereto, and ordinarily one who does not come into court with clean hands is not entitled to resort to mandamus. *Rodríguez* v. *District Court*, 53 P.R. R. 548; *Maisonave* v. *Domenech, Treasurer*, 45 P.R.R. 238; *Serra, Garabís & Co., Inc.* v. *Municipality*, 42 P.R.R. 452, 474;[5] and 34 Am. Jur., § 33, p. 829. However, there is nothing in the record of this case to convince us that the doubts referred to by the judge of the lower court are sufficient to establish that the petitioner did not come into court with clean hands.

■ Although applicable to proceedings of this kind, the defense of laches should not prosper in this case. The petitioner executed the work entrusted to him and then applied to the Acting Mayor of the Municipality of Lajas. The latter official refused to order the payment and alleged that this should be done by the titular mayor. Numerous suits were then brought in connection with the office of the Mayor.[6] After a little more than a year had elapsed upon the new mayor elected in 1944 being sworn in, the petitioner pressed his claim, which was again rejected. Shortly thereafter, he instituted in the District Court of Mayagüez the

---

[5] The case of *Serra, Garabís & Co., Inc.* v. *Municipality, supra*, was affirmed in part and reversed in part by the U.S. Circuit Court of Appeals for the First Circuit, 65 F. (2d) 691. However, that court in its opinion does not discuss the principle that one who applies for a writ of mandamus must come into court with clean hands.

[6] See *Municipal Assembly* v. *District Court*, 62 P.R.R. 743.

mandamus proceeding herein. Under these circumstances, the petitioner has not been guilty of laches.

The four works ordered were constructed; the Municipality of Lajas benefited therefrom; there are funds on hand to pay for them; and there is nothing to show that the law has not been complied with or that there has been any fraud in awarding or performing the contract. The fact that the acting mayor or the administration succeeding Mr. Ramírez Ramírez may have ordered the digging up or removal of the pipe lines previously laid by the petitioner should not alter the situation.

The judgment appealed from should be reversed and another rendered instead ordering the respondents to pay the sum claimed by the petitioner.